DAVID ALLEN VERLANDER

v.

COMMONWEALTH OF VIRGINIA

No. 1096-86

Decided February 2, 1988

COUNSEL

R. Wayne Dawson, for appellant.

W. Mark Dunn, Assistant Attorney General
(Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.** — David Allen Verlander seeks reversal of a robbery and a felony murder conviction upon the ground that the Commonwealth denied him due process of law by using the testimony of a witness whom the Commonwealth's attorney believed to be lying about the witness' own involvement in the crimes. Verlander also maintains that the evidence was insufficient to prove robbery and felony murder premised on robbery. We affirm the judgment because we find that the Commonwealth's attorney did not act improperly. We further find that the evidence was sufficient to prove the crimes of robbery and felony murder.

On May 19, 1986, when the landlord at 2210 West Grace Street investigated water seeping from an apartment, he found Horace Abercrombie dead with stab wounds in his chest and a slit throat. The water in the shower was running and had overflowed. The medical examiner estimated that Abercrombie died between 48 and 72 hours prior to the time he was discovered. Investigators found no physical evidence in Abercrombie's apartment that directly related to Verlander. However, officers found a receipt for a .45 caliber pistol purchased in Germany. The receipt listed Abercrombie as the gun's owner and included the gun's serial number.

At 10:35 p.m. on May 16, 1986, within the 48 to 72 hours during which Abercrombie was killed, Officer David Farmer responded to a call in the area of 2234 Monument Avenue. Upon arriving at the scene, he heard a gunshot and investigated by walking across the street to a fenced backyard at 2301 West Grace Street. There, Officer Farmer found Verlander sitting on a

chicken coop. As Farmer approached, Verlander shifted around and slipped backwards towards a gun, which Farmer identified as a .45 pistol. Officer Farmer found a clip which came from the .45 but did not find a spent shell of ammunition. The gun which Verlander possessed matched the serial number on the receipt later found in Abercrombie's apartment.

A day after investigators found Abercrombie's body, Lola White informed the Richmond police department of a conversation she alleged to have had on May 17, 1987, with Robert Harvey. White recounted to police that Harvey had told her that he and Verlander murdered a man while taking $1,000 and a gun from him in his nearby apartment. He also stated that they had left the water running in the shower.

Acting on Miss White's information, police arrested Robert Harvey on May 20, 1986. Harvey insisted that he did not kill Abercrombie, but stated that Verlander had approached him on the evening of May 16 around 8:00 p.m. and admitted to murdering a man. Harvey further detailed that Verlander asked for a change of pants, and that he gave Verlander a pair of brown corduroys. Harvey led the officers to a trash can outside the garage apartment where he said Verlander could have placed the blue jeans he discarded when donning the corduroys. There the police found a pair of blue jeans with a blood stain at the left knee. However, because the jeans had been soaked in battery acid, laboratory analysis could not confirm whether the blood was human.

The Commonwealth first attempted to prosecute Harvey for the murder and robbery of Abercrombie. At trial, the Commonwealth relied upon Lola White's testimony that Harvey had said he and Verlander killed a man. In his defense, Harvey adhered to the original story he gave upon arrest. The Commonwealth argued that Harvey was not believable. Nevertheless, the jury acquitted Harvey. The Commonwealth then pursued a prosecution against Verlander.

At Verlander's trial, over objection, the Commonwealth called Harvey. Harvey again repeated the story he gave upon his arrest. According to Harvey, Verlander arrived around 8:00 p.m. at the garage apartment where Harvey was staying. Harvey testified that Verlander admitted to killing a man and asked for a change of

pants. Harvey claimed to have no idea how Verlander had killed Abercrombie. In order to prove the robbery element of felony murder, the Commonwealth relied upon Verlander's possession of the .45 pistol once owned by Abercrombie.

In his defense, Verlander called Lola White to demonstrate that Harvey had made prior inconsistent statements. White testified that Harvey told her he had participated in a murder. On cross-examination by the Commonwealth's attorney, without objection, White further testified that Harvey informed her that he and Verlander had taken $1,000 and a gun from the victim.

Prior to trial, Verlander attempted to suppress any testimony by Robert Harvey. He made the same argument he now advances on appeal: that use of Harvey's testimony violated his fifth amendment due process rights because the Commonwealth knowingly employed perjured evidence. To support his contention, he cites *Mooney v. Holohan*, 294 U.S. 103 (1935), and its progeny. *Mooney* and the cases which have followed its holding all stand for the proposition that when the state knowingly uses perjured testimony, it violates the constitutional guarantee of fundamental fairness provided by the due process clause. Verlander contends that the Commonwealth should not have been allowed to use Harvey's testimony, because the Commonwealth had previously argued in Harvey's trial that Harvey was not telling the truth. Verlander contends, therefore, that the introduction of Harvey's testimony by the Commonwealth constituted the knowing use of perjured testimony.

Verlander also contends that *Brady v. Maryland*, 373 U.S. 83 (1963), provides support for his position that the Commonwealth should not have been allowed to introduce Harvey's testimony. *Brady* and the cases interpreting it stand for the proposition that if the Commonwealth possesses material exculpatory evidence, it must disclose the existence of this evidence to the defendant.

None of the authority offered by Verlander is directly apposite to the facts at bar because no proof exists that the Commonwealth either intentionally withheld exculpatory evidence or knew Harvey was lying with respect to his testimony concerning Verlander. The Commonwealth's attorney testified at a suppression hearing that initially he believed that Harvey falsely denied at his own trial any involvement in Abercrombie's murder. However, after

Harvey's acquittal, the Commonwealth's attorney testified that he decided Harvey had lied to Lola White and said he was involved with the crime in order to impress her. At trial, the Commonwealth propounded questions to Harvey pertaining only to David Verlander's involvement in the crime. Irrespective of the Commonwealth's belief as to Harvey's involvement and Harvey's truthfulness as to his involvement, Harvey was consistent throughout as to Verlander's involvement. No version of the crime exonerated Verlander, and the Commonwealth fully disclosed all evidence tending to be exculpatory. The Commonwealth's questions of Harvey elicited responses pertaining only to David Verlander, and Harvey consistently asserted that Verlander participated in the crime. Since no evidence exists that the Commonwealth believed Harvey was untruthful in implicating Verlander, the record does not show that the Commonwealth violated Verlander's due process rights by knowingly using perjured evidence.

Verlander's second ground of error contends that the evidence submitted at trial was insufficient as a matter of law to sustain his conviction for robbery. He argues that the evidence of his possession of the pistol is insufficient to establish that he took the weapon. He further argues that since the Commonwealth could not prove robbery, he could not have been convicted of felony murder.

The elements of common law robbery are (1) the use or threat of violence against the victim and (2) the theft of property from his person or in his presence. *Mitchell v. Commonwealth*, 213 Va. 149, 149, 191 S.E.2d 261, 261 (1972); *Harris v. Commonwealth*, 3 Va. App. 519, 521, 351 S.E.2d 356, 356 (1986). Verlander maintains that even if the evidence showed that he possessed the gun, the Commonwealth nevertheless failed to demonstrate that the asportation was accompanied by any violence or intimidation. Therefore, Verlander concludes the jury could not have convicted him of robbery. When weighing the sufficiency of the evidence, the court of appeals must review the evidence presented in the light most favorable to the Commonwealth and grant it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 535 (1975).

During the Commonwealth's cross-examination of Lola White, she testified that Harvey said he and Verlander had taken

a gun and money from a man during a murder. Verlander neither objected to this evidence at the time of its admission, nor asked for an instruction limiting the jury's consideration of White's testimony to the purpose of impeaching Harvey. Therefore, Verlander may not on appeal ask that the evidence be considered only for the purposes of impeachment. *Baughan v. Commonwealth*, 206 Va. 28, 31, 141 S.E.2d 750, 753 (1965). In the absence of an objection or request for a limiting instruction, the jury could properly have considered White's testimony as substantive evidence. We cannot consider Verlander's arguments to the contrary on appeal. *See Saunders v. Commonwealth*, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970); Rule 5A:18.

In addition to White's testimony which directly inculpated Verlander, circumstantial evidence established that a robbery accompanied Abercrombie's murder. Stephen Willis testified that he saw Abercrombie with the gun six months prior to his death. Abercrombie's niece, Donna Willis, visited the deceased just two weeks before his death and testified that Abercrombie told her he was not afraid to walk to the store by himself because he had a .45 in the house. The receipt found in the house identified Abercrombie's gun as the one Verlander possessed within hours of the murder. Furthermore, the evidence demonstrated that Verlander possessed Abercrombie's pistol in the area where Abercrombie was killed and during the period of time in which Abercrombie died. Moreover, Officer Farmer's testimony suggests that Verlander attempted to hide the gun upon Farmer's arrival at 2301 West Grace Street.

Verlander attempted to establish doubt concerning whether Abercrombie even possessed the .45 on the night he was killed. Thurmond H. Hundley testified that in the summer of 1985 Abercrombie attempted to sell him a .45 caliber gun. Hundley recounted that Abercrombie later said he had sold the gun. Despite Hundley's testimony, when we review the evidence in the light most favorable to the Commonwealth and consider Lola White's testimony, Verlander's possession of the gun, and Donna Willis' testimony, we must conclude that the evidence sufficed to prove Verlander robbed Abercrombie.

As a final ground of error, Verlander contends that because the evidence was insufficient as a matter of law to sustain his conviction for robbery, it was also insufficient to prove felony murder.

Since we have found that the evidence supported Verlander's robbery conviction, his felony murder conviction must also be affirmed.

*Affirmed.*

Benton, J., and Hodges, J., concurred.