DEREK O. BROWN

v.

COMMONWEALTH OF VIRGINIA

No. 0387-86

Decided April 5, 1988

COUNSEL

Mark J. Yeager, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KEENAN, J. — Derek O. Brown was convicted by a jury of second degree murder. On appeal, he raises two issues: (1) whether the trial court erred in allowing a police officer to testify to the contents of an out-of-court statement made by a witness who, at trial, denied making the statement; and, (2) whether the trial court erred in giving an additional jury instruction in response to a question raised by the jury after it began its deliberations. Based on our finding that the trial court erred in allowing the testimony at issue, we reverse Brown's conviction.

At trial, the evidence showed that the body of Thomas Watts was found at Lorton Youth Center One, on October 30, 1985. Watts died of multiple stab wounds. The evidence further showed that on October 31, 1985, Derek Brown gave a statement to Investigator Lyons of the Fairfax County Police Department in which he admitted stabbing Watts one or two times.

During the trial, the Commonwealth called Reggie Williams, a Lorton inmate, as a witness. Williams testified that he did not know either Watts or Brown. He further testified that he had not seen the stabbing. At this point, the Commonwealth asked that the jury be excluded.

Out of the presence of the jury, the Commonwealth proffered evidence that Williams had stated to Officer Lyons that he knew both Brown and Watts and that he had witnessed the stabbing. Lyons was then questioned to determine the substance of Williams' statement. Lyons testified that Williams told him that he knew both Brown and Watts and that he had seen the stabbing. At the Commonwealth's request, the trial court found that

based on Investigator Lyons' testimony, Williams was an adverse witness. Brown excepted to the trial court's ruling. When the jury was returned to the courtroom, the Commonwealth recalled Williams to the witness stand. Williams again denied knowing either Brown or Watts and denied witnessing the stabbing. The Commonwealth asked Williams if he had met with Investigator Lyons in November, 1985, and February, 1986, and whether he had made a statement to Lyons concerning the stabbing. Williams admitted meeting with Lyons on those occasions but denied making a statement about having witnessed the stabbing.

The Commonwealth then called Investigator Lyons who testified that he had interviewed Williams in October, 1985, November, 1985, and February, 1986. He testified that during those interviews Williams stated that he knew both Watts and Brown. The prosecutor asked Lyons whether Williams had stated that he had witnessed the stabbing. Brown's attorney objected, stating that Lyons should only be allowed to testify whether Williams had ever told him that he observed the stabbings and should not be allowed to relate to the jury the details of Williams' statement. The trial court overruled defense counsel's objection. Lyons then related Williams' statement in detail.

Lyons testified that Williams said he had followed a group of inmates to the admissions center on October 30, 1985 and had identified two individuals who had been involved in a fight. Brown objected again, stating that this testimony was hearsay and in violation of his sixth amendment rights. The trial court overruled the objection. Lyons then testified that Williams identified Brown as one of the individuals in the group. He further testified that Williams said he saw Brown with a weapon, and that Brown stabbed the victim several times in the chest and shoulder areas.

Brown did not testify or offer any witnesses in his defense. After the close of all of the evidence, Brown made a motion to strike the Commonwealth's evidence, alleging that the evidence was insufficient to establish he had killed Watts. He also argued that Williams' statement, as related by Lyons, was inadmissible hearsay and violated his sixth amendment right of confrontation. The trial court denied Brown's motion.

Brown first argues that the trial court erred in allowing Investigator Lyons to testify to the details of Williams' statement con-

cerning the stabbing. He contends that since Williams' testimony was not injurious to the Commonwealth's case, he was not subject to impeachment. In response, the Commonwealth contends that Code § 8.01-403 permits this type of impeachment testimony.

In this appeal, Brown does not directly challenge the trial court's ruling that Williams was an adverse witness. Instead, he argues that the impeachment evidence offered by the Commonwealth was inadmissible hearsay which violated his sixth amendment right of confrontation. While it would have been better practice to appeal here both the ruling on Williams' status as an adverse witness and the admission of the impeachment testimony, we find that Brown's challenge to the impeachment evidence sufficiently covers the issue presented.

We turn now to examine whether Williams' testimony was a proper subject for impeachment. Code § 8.01-403[1] allows the admission of prior inconsistent statements made by a party's witness after that witness has been found to be adverse by the trial court. This section applies to criminal as well as civil cases. *Roberts v. Commonwealth*, 230 Va. 264, 269, 337 S.E.2d 255, 258 (1985). In the case before us, Williams testified that he did not know Brown and had not seen the stabbing. This was in direct contradiction to his earlier statement to Investigator Lyons that he knew Brown and had witnessed the stabbing.

In order to impeach one's own witness, however, it is not sufficient merely that the witness gave a contradictory statement on a prior occasion. Nor is it sufficient that the testimony of the witness fails to meet the expectations of the party calling him. In order to be impeachable, the testimony offered must be injurious or damaging to the case of the party who called the witness. *Virginia Electric & Power Co. v. Hall*, 184 Va. 102, 105-06, 34 S.E.2d 382, 383 (1945). If the testimony sought to be impeached

---

[1] Code § 8.01-403 provides: A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness.

is of a negative character and has no probative value, there is no statutory basis for impeachment. *Id.* at 106, 34 S.E.2d at 383; *Underwood v. Brown*, 1 Va. App. 318, 326, 338 S.E.2d 854, 858-59 (1986).

In *Virginia Electric Power Co. v. Hall*, a vehicular negligence case, a witness testified that she could not estimate either the speed of the bus in which she was a passenger, or the speed of the car which collided with the bus. She also testified that she did not know how far the car was from the bus when she first saw it, or where the bus was in the intersection at that time. The witness further testified that she did not know whether the car slowed down or turned prior to the collision, whether it struck the rear of the bus, or whether the bus stopped immediately after the accident.

This same witness, however, had given a prior statement to an insurance investigator stating that the bus was operating at a moderate speed; that the car was coming "fast" at not less than 35 miles per hour; that the car was fifty to sixty feet from the bus when she first saw it; that the bus was "about across" the intersection when she first saw it; that the car did not appear to slow down or turn prior to the collision; that the car ran "headon" into the side of the bus; and that the bus stopped quickly after the accident.

Defense counsel in *Hall* sought to impeach the witness on the basis of her prior inconsistent statement. The Supreme Court upheld the trial court's denial of this request. The Court reasoned that since the witness' testimony had no probative value and was not injurious to the defendant's case, it was not subject to impeachment. *Id.* at 108, 34 S.E.2d at 384.

Applying this reasoning to the case before us, we find that Williams' testimony that he did not know either Brown or Watts and did not see the stabbing had no probative value. It could not have assisted the trier of fact in determining Brown's guilt or innocence. Having no probative value, it was not damaging or injurious to the Commonwealth's case. Therefore, we find that Williams' testimony was not subject to impeachment, and that the trial court erred when it allowed Lyons to testify in this regard. Further, because of the extensive and incriminating nature of Lyons' testimony, we cannot say that its admission was harmless

error.

We do not address Brown's remaining argument as it is unknown whether it will arise again if the case is retried. Based on our finding that the trial court erred in allowing Lyons' impeachment testimony, we reverse Brown's conviction and remand this case for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Duff, J., and Moon, J., concurred.