**Alexandria**

TYRONE RAGLAND, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0197-92-4

Decided August 17, 1993

914

COUNSEL

Alan C. Drew (Warren W. McClain, on brief), for appellant.

Michael T. Judge, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

## OPINION

**BAKER, J.**—Tyrone Ragland, Jr. (appellant) appeals from a judgment of the Circuit Court of Fairfax County (trial court) that approved a jury verdict convicting him of first degree murder in violation of Code § 18.2-32. Appellant contends that the trial court erred by (1) admitting into evidence certain statements he made; (2) admitting a "shank" and mask into evidence; (3) admitting into evidence a note he alleges was not authenticated; (4) allowing the Commonwealth to present testimony to the jury he alleges to be false and to impeach its own witness; and (5) denying his motions to strike and set aside the verdict as the evidence was insufficient to support a conviction.

The jury's verdict will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

Upon familiar principles, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Id.* As the parties are fully conversant with the record in this case, we will recite only those facts necessary to a disposition of the issues on appeal.

The record discloses that on June 6, 1991, appellant, an inmate of Youth Center One at the Lorton Reformatory, stated to Corrections Officer Joan Courtney that he was "back [at Lorton] on another charge" and "if [he] g[o]t some time," he was "taking somebody off the count."[1]

Approximately one week later, on June 15, 1991 at 9:40 p.m., Corrections Officer Glenwood Greene observed inmate Daniel Childs (victim) run from the "TV room" in "two dorm," stating that he had been stabbed. Greene saw a masked man wearing "institution clothes" poised at the threshold of a doorway leading outside to the porch. As the masked individual ran toward the porch, Greene ran out a second door to "cut him off." However, the masked man "doubled back" through the building, so Greene also "doubled back" through the door he had just exited. Greene then saw an unmasked individual

---

[1] The "count" is the roster of residents at Lorton.

running out of the building and gave pursuit. Greene did not see the individual's face and "lost him" in "four dorm." Greene returned to "two dorm," where he retrieved a "shank" and mask from the porch, approximately five feet from where he had observed "the man with the mask."

Anthony Burnell, a "recreation specialist" at Lorton, testified that, at approximately 9:40 p.m. that same evening, he observed Greene chasing appellant. He "called out to Officer Greene and told him that it was Ragland who he was chasing."

At approximately 10:00 p.m., Corrections Officers Eugene Chesson and John Lee "went to four dorm to pick up [appellant] to bring him to Control Center." Neither officer mentioned the stabbing or informed appellant "why he was going to Control." As appellant was entering the Control Center, Burnell overheard a "couple of inmates" ask him, "What's up?" Appellant responded, "They think that I had something to do with the stabbing in two dorm."

On October 30, 1991, immediately prior to trial, the Commonwealth advised the trial court that a witness, inmate Nathaniel Boone, had "identified [appellant] as the man he saw come into the TV room with a mask on, stab the victim, take the mask off and run out." The Commonwealth indicated that Boone was unwilling to testify and moved the court to "call him to the stand and to hold him in contempt" for such refusal. The trial court called Boone, who admitted that he witnessed the murder and heard the assailant referred to as "Ty — Ty — something like that." Upon further examination, he admitted that he had previously given appellant's full name. He testified that his previous account of the events had been truthful, but nevertheless stated, "I'm not testifying. My life on the line; not you all's." He was found in contempt and sentenced to jail. Shortly thereafter, however, he indicated that he was willing to testify and the trial commenced.

On October 31, 1991, the second day of trial, Boone's attorney informed the court that Boone would testify that he "made up" his previous statements and "did not actually see anything." The Commonwealth called Boone to the stand over appellant's objection, stating, "We don't know if he's going to give that new version anymore than we were sure he was going to give the old version. So, I guess at this point we simply have to call him to the stand and see what he says under oath."

Boone testified that he "didn't see anyone stab nobody." The Commonwealth then inquired whether he had "in the past given a different version of the events that evening." Appellant objected, contending that the Commonwealth was "impeaching [its] own witness." The trial court overruled the objection, and Boone explained that he had lied in his previous statement. He stated that he had only identified appellant as the assailant because he had been "tricked" by investigators.

Emmett Anderson, an inmate at the Fairfax Adult Detention Center, testified that, on the morning of October 31, 1991, appellant threw a note[2] into his cell and asked him "to try to get it delivered to a guy around the corner in cell 38." Anderson passed the note to inmate Jeffrey Hunter, who testified that he was "supposed to pass it to a fellow in cell R38," but was apprehended by deputies who "took the note" from him.

Deputy David Heflin testified that Paul Vernon was the sole occupant of cell R38. Vernon testified for appellant and stated that he saw the assailant's face and it was not appellant. However, Investigator James Dooley testified that, shortly after the murder, Vernon told him that he "did not see anything."

Frances Field, an Assistant Chief Medical Examiner, testified at trial that the shank found at the scene had "dimensions which would be consistent with the [victim's] wound." Scientific analysis detected human blood on the shank.

Appellant first argues that the trial court erred by admitting into evidence his statement to Courtney that he was "taking somebody off the count," and his statement to other inmates, overheard by Burnell, that "[t]hey think that I had something to do with the stabbing in two

---

[2] The note read as follows:

Look

After Dannyboy got stabbed he ran out the front door. You didn't see Boone in there. About 9 or 10 people in the T.V. room about 6 to 7 had on institution clothes about 4 fit the mask man description. In the whole Dorm it was about 10 people who fit that description. Say cause when you and niggas in the dorm play B.B. you wasn't the tallest at all. Ain't no way one person in the whole dorm was near that description. I know cause I lived there day and night. The mask man was medium build chest because the institution shirt was tight. You had institution clothes on that night. They didn't count until Green came back about 20 to 25 min. later. And then other people were coming from the gym and off the pound. You seen the dude throw off the mask but not the knife for sure.

Self Destruct.

dorm.'' Appellant contends that the statements are irrelevant, highly prejudicial and inadmissible hearsay.

■ Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case. *Jenkins v. Winchester Dep't of Social Servs.*, 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991); *Wise v. Commonwealth*, 6 Va. App. 178, 187, 367 S.E.2d 197, 202-03 (1988). ''Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value.'' *Wise*, 6 Va. App. at 188, 367 S.E.2d at 203. ''This responsibility is a matter submitted to the sound discretion of the trial court, [which] will not be disturbed on appeal absent a clear abuse of discretion.'' *Id.*

The statement overheard by Burnell was relevant to the issue of whether appellant stabbed the victim. Appellant had knowledge of a stabbing that took place in a dorm other than his own within twenty minutes of its occurrence, although the corrections officers had not mentioned it in his presence. The statement to Courtney was relevant to appellant's intent to kill. Intent '' 'may be, and frequently is, shown by circumstances.' These circumstances include a person's statements.'' *Campbell v. Commonwealth*, 12 Va. App. 476, 483-84, 405 S.E.2d 1, 4 (1991) (en banc) (citation omitted). Further, the fact that the statement to Courtney was made over one week prior to the stabbing goes to the weight of the evidence, not its admissibility. *Wise*, 6 Va. App. at 188, 367 S.E.2d at 203; *see also Duncan v. Commonwealth*, 2 Va. App. 717, 723-25, 347 S.E.2d 539, 543-44 (1986). We find no abuse of discretion in the trial court's determination that the probative value of the statements exceeded any prejudicial effect that may have resulted from their admission.

■ Neither are the statements inadmissible hearsay. ''Any statement by a party to the proceedings, including an out-of-court statement by a defendant in a criminal case, is admissible as an exception to the hearsay rule when offered against that party.'' *Alatishe v. Commonwealth*, 12 Va. App. 376, 378, 404 S.E.2d 81, 82 (1991); *West v. Commonwealth*, 12 Va. App. 906, 910, 407 S.E.2d 22, 24 (1991). The statement is not required to have been inculpatory or incriminating at the time it was made. *Alatishe*, 12 Va. App. at 378, 404 S.E.2d at 82. Appellant's statements were party admissions and, thus, admissible as an exception to the hearsay rule.

■ Appellant further contends that the trial court erred by admitting into evidence the shank and mask recovered by Officer Greene. The admissibility of evidence is within the broad discretion of the trial court, which will not be disturbed on appeal absent an abuse of discretion. *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). Here, immediately after the stabbing, Greene observed a masked individual standing in the doorway of the room where the incident took place. Greene later retrieved a shank and mask approximately "five feet" from where he observed this individual. Human blood was detected on the shank. The medical examiner testified that the shank had "dimensions which would be consistent with the [victim's] wound." We find no abuse of discretion by the trial court's admission of these items into evidence.

■ Appellant next argues that the trial court erred by admitting the note into evidence without proper authentication. Before any writing may be introduced into evidence, it must be authenticated, "which is the providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed." *Walters v. Littleton*, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982). A document's authenticity may be established through the use of circumstantial evidence, where surrounding circumstances establish that the writing is genuine. *Id.*; *Kitze v. Commonwealth*, 15 Va. App. 254, 263, 422 S.E.2d 601, 607 (1992); *Jackson v. Commonwealth*, 13 Va. App. 599, 602 n.1, 413 S.E.2d 662, 665 n.1 (1992); *Duncan*, 2 Va. App. at 726, 347 S.E.2d at 544. " 'The court must determine if the circumstantial evidence is sufficient to justify the document's admission; the jury will then, as in all cases, make an independent decision as to whether the document is genuine.' " *Duncan*, 2 Va. App. at 726-27, 347 S.E.2d at 544 (citation omitted); *Kitze*, 15 Va. App. at 263, 422 S.E.2d at 607. "The amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." *Walters*, 223 Va. at 451, 290 S.E.2d at 842.

Here, the evidence established that appellant threw the note into another inmate's cell and asked the inmate "to get it delivered" to Vernon, who was one of appellant's witnesses. The inmate identified the note as the one he had received and identified appellant as "the person that threw the note." Further, the contents of the note were "fairly unique" to the offense for which appellant was being tried.

*See Duncan*, 2 Va. App. at 727, 347 S.E.2d at 545. We find the evidence sufficient to support the trial court's decision to admit the note.

■ Appellant further contends, however, that the note was improperly admitted for impeachment purposes "before the issue had been generated" by appellant. We disagree. Evidence that a defendant "procured, or attempted to procure, the absence of a witness, or to bribe or suppress testimony against him, is admissible, as it tends to show the unrighteousness of the defendant's cause and a consciousness of guilt." *McMillan v. Commonwealth*, 188 Va. 429, 432-33, 50 S.E.2d 428, 430 (1948).

■ We turn next to appellant's argument that the trial court erred by allowing the Commonwealth to present false testimony to the jury. It is well settled that the Commonwealth may not knowingly use false testimony. *Verlander v. Commonwealth*, 5 Va. App. 482, 485, 364 S.E.2d 531, 532 (1988); *Walker v. Commonwealth*, 4 Va. App. 286, 301, 356 S.E.2d 853, 861 (1987); *see also Dozier v. Commonwealth*, 219 Va. 1113, 1116, 253 S.E.2d 655, 657 (1979). The record here supports the Commonwealth's representation to the court that it did not know what Boone's testimony would be.

Prior to trial, Boone stated under oath that, although his previous statements to investigators had been "the truth," he would not testify at trial. Shortly thereafter, however, he indicated that he was willing to testify. On the second day of trial, Boone's counsel informed the court that Boone would testify that his previous statements had been "made up." In response, the Commonwealth's Attorney stated: "We don't know if he's going to give that new version anymore than we were sure he was going to give the old version. So, I guess at this point we simply have to call him to the stand and see what he says under oath." We cannot say as a matter of law that the representations of the prosecutor, as an officer of the court, were false. Thus, we find that the trial court did not err in allowing Boone to testify.

■ Appellant further contends that the trial court erred by allowing the Commonwealth to impeach Boone through the use of his prior inconsistent statements. Code § 8.01-403, applicable in criminal as well as civil cases, allows impeachment of a party's witness with prior inconsistent statements after that witness has been found by the trial court to be adverse. *Brown v. Commonwealth*, 6 Va. App. 82, 85, 366 S.E.2d 716, 718 (1988). "In order to impeach one's own witness,

however, it is not sufficient merely that the witness gave a contradictory statement on a prior occasion." *Id.* Rather, the "testimony offered must be injurious or damaging to the case of the party who called the witness." *Id.* If the testimony "is of a negative character and has no probative value, there is no statutory basis for impeachment." *Id.* at 85-86, 366 S.E.2d at 718; *see also Virginia Elec. & Power Co. v. Hall*, 184 Va. 102, 106, 34 S.E.2d 382, 383 (1945).

In *Brown*, a witness testified that he "had not seen the stabbing" for which Brown was on trial, in direct contradiction to his earlier statement to investigators that he had witnessed the incident. We held that this testimony lacked probative value and was not "damaging or injurious to the Commonwealth's case." *Id.* at 86, 366 S.E.2d at 719. Because it "could not have assisted the trier of fact in determining [the defendant's] guilt or innocence," it was, thus, not subject to impeachment. *Id.* Similarly, Boone's testimony that he "didn't see anyone stab nobody" was neither damaging nor injurious to the Commonwealth's case; thus, it was not subject to impeachment by the Commonwealth.

■ Having found that the trial court erred in permitting the Commonwealth to impeach Boone's testimony, we nevertheless hold that, under the facts of this case, the error was harmless. "The crux of the harmless error analysis is whether the defendant received a fair trial on the merits and substantial justice has been achieved." *Timmons v. Commonwealth*, 15 Va. App. 196, 199, 421 S.E.2d 894, 896 (1992). A non-constitutional error is harmless if " 'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (citation omitted). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." *Id.* In this instance, the remaining evidence against appellant was substantial. Based upon our review of the record and the evidence, we conclude that the Commonwealth's impeachment of Boone did not affect the verdict or otherwise deprive appellant of a fair trial on the merits.

Lastly, we find that the trial court did not err in denying appellant's motions to strike and to set aside the verdict. The evidence was sufficient to support his conviction. The Commonwealth established that, one week before the murder, appellant stated that he was "taking somebody off the count." Immediately following the stabbing, Officer

Greene observed a masked man at the scene and gave pursuit. The fleeing man, who had since discarded the mask, ran by Burnell, with Greene in pursuit. Burnell identified the man as appellant. Greene subsequently recovered a mask and shank from the scene; the shank bore traces of human blood and its dimensions were consistent with the victim's wound. Appellant displayed knowledge of the stabbing, which took place in a dorm other than his own, within twenty minutes of its occurrence, although corrections officers had not mentioned it in his presence. Finally, appellant attempted to communicate with one of his witnesses by passing a note to him through other prisoners. From this evidence, the jury could have inferred beyond a reasonable doubt that appellant stabbed the victim. We cannot say that its judgment is plainly wrong or without evidence to support it.

Appellant additionally argues that his motion to set aside the verdict should have been granted because of the "totality" of the "substantial errors committed during the trial." We have reviewed the record and conclude that appellant was not denied a fair trial based upon trial court error.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Bray, J., and Fitzpatrick, J., concurred.