COURT OF APPEALS OF VIRGINIA


Present: Judge Bray, Senior Judges Cole and Overton
Argued at Richmond, Virginia


WILLIAM LOYD FETTY

                                        MEMORANDUM OPINION* BY
v.    Record No. 0176-99-2             JUDGE NELSON T. OVERTON
                                           FEBRUARY 1, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HANOVER COUNTY
                 David F. Berry, Judge Designate

          Eugene M. Simmons (William A. Parks, Jr., on
          brief), for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     William Loyd Fetty, appellant, appeals his convictions for

second degree murder and use of a firearm in the commission of

that murder.  Appellant contends (1) that the trial court erred by

overruling his request to call the Commonwealth's Attorney as a

material witness, (2) that the trial court erred by overruling his

request to call Deputy Sheriff Chris Kothe as an adverse witness,

(3) that the trial court erred by refusing his request for a

mistrial, and (4) that the evidence was insufficient to support

appellant's convictions.  For the following reasons, we find no

error and affirm the convictions.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Facts

On the evening of the shooting, appellant went to his son's home to look for items missing from his home. Appellant suspected that his son, Scott, had stolen these missing items. Thereafter, Scott telephoned appellant because Scott thought appellant owed him an apology. Appellant called Scott "a little bastard" and denied owing him anything. A series of angry telephone calls followed between appellant and Scott.

Scott drove to appellant's home to have a face-to-face talk with appellant. Chris Crampton rode with Scott to appellant's home. Appellant claimed that he thought Scott was coming to "kick [his] ass" so he put his eleven gauge shotgun near the back door. When Scott arrived, he approached appellant's deck and appellant approached Scott with balled fists. Scott said, "I'm not here for this, if you put your hands on me I will defend myself." Appellant, who has a history of becoming "enraged," was mad. Appellant said, "[T]wo of us can play this game."

Appellant went inside his house and then returned with his shotgun. Appellant pointed the gun at Scott's face. Scott asked appellant whether he was going to shoot him. Appellant said, "[Y]ou see that truck?" Appellant fired two rounds into Scott's truck. Scott put his hands in front of his father and yelled three times that his "buddy's in the truck." Appellant looked Scott in the eye, raised the gun up and continued firing at the passenger door of Scott's truck. Scott ran to his truck and saw

-

Crampton laying across the seat. Scott yelled that appellant had killed his friend, and then drove to a neighbor's home to call the sheriff's department.

Appellant told a man in jail that "he thought he had seen something duck down in the truck" before he fired gunshots at Scott's truck.

In a statement to the police, appellant claimed that Scott had not told him anyone was in the truck until after he had fired five shots into the truck. At trial, appellant's sister testified that Scott said he had not told appellant anyone was in the truck until the last gunshot. Appellant's sister's roommate testified that Scott told her that appellant did not know anyone was in the truck until after the last gunshot. Scott denied making these statements.

## Issues I through III

Appellant complains that the trial court erred by refusing to allow him to call the Commonwealth's Attorney as a material witness, by refusing to allow him to call Kothe as an "adverse witness," and by refusing to declare a mistrial. In reality, these complaints amount to the single claim that the trial court erred by refusing to allow him to call the Commonwealth's Attorney as a witness in order to impeach Kothe with a prior inconsistent statement.

"Code § 8.01-403 allows a party to impeach his or her own witness by prior inconsistent statements only when the witness

-

whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand."  Maxey v. Commonwealth, 26 Va. App. 514, 519-20, 495 S.E.2d 536, 539 (1998).  One's own witness may be impeached if the testimony of that witness "proves adverse," which means the testimony of the witness is "injurious or damaging."

Defense counsel called Kothe to testify about appellant's reaction when appellant was told that the person in the truck had been killed.  Kothe testified that appellant said, "Oh, no." However, Kothe had no present recollection of telling the Commonwealth's Attorney that the color drained from appellant's face when told that Crampton was dead.  On the day before this issue was raised in trial, appellant learned that Kothe had no present recollection of saying anything about the color on appellant's face.  Therefore, defense counsel was not surprised when Kothe testified that he had no present recollection regarding the color draining from appellant's face. Additionally, testimony that Kothe could not recall saying the color drained from appellant's face was not adverse to appellant, but only failed to meet appellant's expectations. See Brown v. Commonwealth, 6 Va. App. 82, 85-86, 366 S.E.2d 716, 718 (1988).  Therefore, Kothe did not "prove adverse" within the meaning of Code § 8.01-403, and defense counsel could not impeach Kothe pursuant to that section.

-

The trial court correctly noted that allowing the defense to call the Commonwealth's Attorney as a witness would require that someone else be brought in to prosecute the case. The court noted that the Commonwealth's Attorney disclosed Kothe's statement to the defense but has no control over how that information is utilized. Moreover, there was no showing as to why defense counsel could not be disqualified from the case, as he too heard Kothe's previous statement. The court noted that the matter should have been "sifted through" and denied the motion for a mistrial "because it comes too late." The matter could have been avoided. Therefore, the trial court properly exercised its discretion when it denied appellant's motion for a mistrial. See Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993).

## Issue IV

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence showed that Scott Fetty confronted his father, the appellant, about what happened during an earlier visit. They began to argue, and appellant asked his son, Scott, to leave. Scott refused to leave. Enraged, appellant went inside his house and came back outside with a shotgun. Scott

-

asked if he was going to shoot him.  Appellant replied, "Hell, yeah. . . . You see that truck?"  Appellant fired two rounds into the back wheel of Scott's truck before dropping the gun down to his side.  Scott held up his hands and said, "my buddy's in the truck, my buddy's in the truck, my buddy's in the truck." Appellant looked Scott "dead in the eye," picked up the gun and shot into the passenger door, killing Chris Crampton who was in the truck.

In a statement to Investigator Stanley Kirks, appellant claimed that Scott did not tell him anyone was in the truck until after appellant fired at the passenger door.

The fact finder believed the Commonwealth's evidence, and rejected appellant's claim that he did not know anyone was in the truck when he fired his gun.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant committed second degree murder.

Affirmed.

-