COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Malveaux and Duffan
Argued at Richmond, Virginia


WILMER IVAN LICONA CRUZ

                                     MEMORANDUM OPINION[*] BY
v.       Record No. 1982-24-2         CHIEF JUDGE MARLA GRAFF DECKER
                                          MARCH 31, 2026
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Jayne A. Pemberton, Judge

Monica Tuck, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


     Wilmer Ivan Licona Cruz appeals his convictions for indecent liberties with a child by a

custodian, aggravated sexual battery, rape, object sexual penetration, and forcible sodomy in

violation of Code §§ 18.2-61(A)(iii), -67.1 to -67.3, and -370.1.  He contends that the trial court

erroneously denied his motion to declare one of his witnesses adverse.  He also suggests that the

court erred by holding the evidence proved an act sufficient to support his conviction for object

sexual penetration.  And absent such evidence, he argues that this conviction violated double

jeopardy protections.  We hold that any error in refusing to declare Cruz's witness hostile was

harmless.  Further, to the extent that Cruz did not waive his second assignment of error, he failed

to establish that his conviction for object sexual penetration constituted double jeopardy.

Consequently, we affirm his convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Cruz committed the crimes at issue against M.C.M. between September and December 2020.[3] M.C.M. is the daughter of Melida Castro. Castro and Cruz are first cousins. They grew up together, and Castro thought of Cruz "like a brother."

In April 2020, Castro allowed Cruz to move into the Chesterfield County residence where she lived with her children—M.C.M., who was eight years old at the time, and the girl's younger brother. Cruz sometimes watched M.C.M. and her brother while Castro worked or ran errands.

Around December 2020, M.C.M. reported that Cruz had touched her between her legs. As a result, Castro asked Cruz to move out. A few days later, Castro confronted Cruz about the allegations, which he denied. Cruz left Virginia only days after the confrontation and moved to Texas.

Warrants for Cruz's arrest were issued about two months later, and he was extradited from Texas about two years after that. He was tried for the instant offenses in July 2024, over three and a half years after the alleged crimes.

M.C.M., who was twelve years old at the time of trial, testified that Cruz touched her vagina with his penis, hand, and mouth. When asked "[w]hat, if anything, . . . Cruz put *inside* [her] vagina," M.C.M. answered, "His penis and hand and his mouth." (Emphasis added). In follow-up, M.C.M. confirmed that Cruz put his penis and tongue inside her vagina. When the

---

[2] An appellate court "review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Considering the evidence in this light requires the reviewing court "to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn []from [that evidence].'" *Tomlin v. Commonwealth*, 302 Va. 356, 361 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

[3] The child victim is identified using her initials to protect her privacy.

prosecutor asked whether he also "put[] his hand inside [her] vagina," she replied, "I don't remember." So she testified on direct examination both that Cruz put his hand inside her vagina and that she did not remember whether he did so.

The prosecution also introduced testimony from Lisa Johnston, a forensic interviewer for a child advocacy center. Johnston spoke with M.C.M. about the alleged abuse in a one-hour recorded interview in December 2020, just days after Castro learned about it. The parties stipulated to the admissibility of the recording, which contained both audio and video and was played for the jury.[4]

M.C.M. told Johnston during the recorded interview that her aunt, Nanci Castro-Martinez (Martinez), insisted that Cruz did not abuse M.C.M. and called M.C.M. a "stupid liar." According to M.C.M., her mother and Martinez had a disagreement because, unlike Martinez, Castro believed M.C.M.'s report of abuse. M.C.M. confirmed during cross-examination that Martinez did not believe her accusations about Cruz and "called [her] . . . a liar." M.C.M. said this occurred when Martinez came to Castro's home. She elaborated that Castro would not let Martinez into the residence at that time.

During Cruz's case-in-chief, defense counsel called Martinez to testify. She explained that she was M.C.M.'s aunt and Cruz's first cousin. When Martinez first heard about M.C.M.'s accusations against Cruz, she went to Castro's house. In response to defense counsel's question

---

[4] During the forensic interview, M.C.M. did not know the name for the body part in her crotch area. When Johnston asked her to name the part using its function, M.C.M. said the part was used "to pee." M.C.M. reported that Cruz touched her there with his hand. As she spoke, she held out her hand, with the palm up, and wiggled all of her fingers in a unified squeezing motion. She also said he touched her there beneath her clothing, moved his hand around, and asked her if she liked it. Johnston sought clarification, asking, "[W]hen he gave you the touch with his hand, . . . did he ever touch inside of that place where you pee, or was it just on top of your skin there?" M.C.M. replied, "It was underneath it."

about whether she was "ever not allowed into [Castro's] house," Martinez replied, "No," and said she "always had access to enter."

Continuing, defense counsel asked Martinez if she had spoken to a police officer about the allegations, as well as whether M.C.M. was "known to exaggerate" or "lie." Martinez confirmed that she had talked to an officer and answered "[n]o" to whether M.C.M. exaggerated or lied. Martinez elaborated that she remembered making statements to the officer "about whether [M.C.M.] used to lie" and "whether [Martinez] believed her [accusations about Cruz]." She said she told the officer that M.C.M. "was just like any other child," "[s]ometimes" not telling the truth about "[s]mall stuff" like "whether he hit me . . . or whether he's the one to blame." According to Martinez, she told the officer both that she "believed [M.C.M.]" and that she "didn't know" whether she believed M.C.M.'s accusations. She also reported that she did not know what to say regarding the child's truthfulness about "serious matters."

Additionally, Martinez testified about her relationship with M.C.M. between the time of the abuse and trial. She said M.C.M. had "matured" and "every single time" they had spoken, M.C.M. "ha[d] affirmed the . . . [s]ame story" about what Cruz did. Martinez also replied, "Yes," and, "100 percent," when asked if, at the time of trial, she believed M.C.M.'s statements about Cruz's abuse. She said it was "hard [for her] to believe" at first because Cruz was "like a brother" and she "used to trust him fully."

Near the beginning of Martinez's testimony, defense counsel asked the trial court to declare her an adverse witness, and he later renewed that motion. He argued "two different elements" supported the request—that Martinez was "closely related to . . . the complaining witness by blood" and she was "reluctan[t] to testify to things already in evidence." He later reframed his argument, stating Martinez's testimony—that she believed M.C.M. was "truthful"—was both "injurious" and "unexpected" in light of Martinez's prior statements to the

- 4 -

police. The trial court repeatedly denied the motion, stating counsel was "being given the opportunity" but was "not there yet."

Defense counsel subsequently proffered that if Martinez had been declared adverse, he would have introduced evidence from the detective's notes that she had previously said M.C.M. was "known to exaggerate things and ha[d] lied about other incidents." The prosecutor proffered the remainder of the contents of the detective's notes—Martinez's paraphrased statements that M.C.M. "ha[d] never made any sexual accusations in the past," Martinez "d[id]n't know why the child would make this up," and she was "suspicious" of Cruz "because he left the area after being confronted by the allegations." The trial court replied, "I think that's fair," and defense counsel did not object to the additions.

Cruz testified in his own defense. He denied putting "any of [his] body parts inside any of [M.C.M.'s] body parts." He also denied "touch[ing] her vagina with [his] hand."

During Cruz's initial motion to strike, defense counsel challenged the sufficiency of the evidence on the object sexual penetration charge, arguing that the evidence proved, at best, the penetrations required for rape and oral sodomy. The court denied the motion to strike, noting in part that there was evidence of penetration with "three different objects"—Cruz's "finger, tongue, [and] penis."

At the close of Cruz's case-in-chief, defense counsel renewed his motion to strike. He contended in part that the object-sexual-penetration charge presented a double jeopardy problem. In denying Cruz's renewed motion to strike the evidence, the court specifically noted not only M.C.M.'s testimony "as to tongue, finger and/or hand[,] and penis" "but also the child advocacy center interview."

In closing argument, defense counsel highlighted Martinez's admission that she "didn't know who to believe when these allegations occurred." He also used M.C.M.'s testimony to

impeach Martinez. He specifically noted M.C.M.'s statement that Martinez called her a "stupid liar" in December 2020 due to her claims against Cruz. And he contrasted that with Martinez's testimony at trial claiming that she believed M.C.M. at the time of the disclosure. Defense counsel also pointed to M.C.M.'s testimony that Castro would not let Martinez into their home at that time, again noting that Martinez had denied this fact during her testimony.

The jury convicted Cruz of the five charged offenses. He was sentenced to 175 years in prison with 150 years suspended.

ANALYSIS

I. Denial of Adverse-Witness Motions

Cruz argues that the trial court's denial of his adverse-witness motions was error that prevented him from impeaching Martinez with her prior inconsistent statements.

Virginia law addresses the impeachment of a litigant's witness who is deemed to have an "adverse interest" or to have given "adverse . . . testimony," the latter of which is also referred to as "prov[ing] adverse or hostile." Code §§ 8.01-401(A), -403; *Va. Elec. & Power Co. v. Hall*, 184 Va. 102, 105 (1945); *see Butler v. Parrocha*, 186 Va. 426, 431-33 (1947) (analyzing a predecessor to Code § 8.01-403); *see also Hall v. Commonwealth*, 233 Va. 369, 374-75 (1987) (addressing both common-law and statutory principles relating to adverse testimony). When a witness proves adverse by giving testimony that "surprises the party who called [her]," that party may, with leave of court, prove that the witness, at some other time, made a statement inconsistent with his or her present testimony. *Teleguz v. Commonwealth*, 273 Va. 458, 479 (2007); *see Hall*, 233 Va. at 374. The purpose of admitting the prior inconsistent statement is for impeachment only, and the opposing party is entitled to a cautionary instruction to that effect upon request. *See Hall*, 233 Va. at 375. In other words, the party who called the witness is entitled to *neutralize* surprise testimony that is "injurious or damaging to [his] case." *See*

*Ragland v. Commonwealth*, 16 Va. App. 913, 921 (1993) (quoting *Brown v. Commonwealth*, 6 Va. App. 82, 85 (1988)). The litigant is not entitled to prove the truth of the prior statement. *See Hall*, 233 Va. at 375.

In this case, we do not consider whether the trial court's refusal to declare Martinez an adverse or hostile witness was error because we conclude that if any such error occurred, it was harmless. *See Shaw v. Commonwealth*, 304 Va. 217, 233-34 (2025). Here, the evidence that defense counsel sought to elicit was simply introduced in a slightly different way. And defense counsel was able to argue the impeachment information to the jury, thereby minimizing any harm from Martinez's initial reluctance to characterize her prior opinion about M.C.M.'s truthfulness in the way Cruz expected.

Virginia's standard for reviewing nonconstitutional error for harmlessness provides that the verdict should stand if it is clear from the record that the error "did not 'influence the jury' or had only a 'slight effect.'" *Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015) (per curiam) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see Shaw*, 304 Va. at 234-35. The reviewing appellate court must be able to "say, with fair assurance, after pondering all that happened . . . , that the judgment was not substantially swayed by the error" and "substantial rights were not affected." *Clay*, 262 Va. at 260 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). If the court cannot reach that conclusion, "or if one is left in grave doubt, the conviction cannot stand." *Id.* (quoting *Kotteakos*, 328 U.S. at 765).

When the alleged error is an improper limitation on the impeachment of a witness, the inquiry addresses "whether, assuming that the damaging potential of the [impeachment] were fully realized, [the appellate court] might nonetheless say that the error was harmless" under the applicable standard. *Pereira v. Commonwealth*, 83 Va. App. 431, 448 (2025) (quoting *Cousins v. Commonwealth*, 56 Va. App. 257, 276 (2010)) (applying this principle to a limitation on cross-

examination subject to constitutional harmless-error analysis).[5] "Important factors in the . . . analysis . . . include 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of [the impeachment] otherwise permitted,' and 'the overall strength of the prosecution's case.'" *Id.* (quoting *Cousins*, 56 Va. App. at 276). If the "impeachment evidence" excluded is merely "cumulative" and the evidence admitted permits "[defense] counsel [to] 'fully argue[]'. . . bias to the jury, any error in limiting [the defendant's] right to [impeach the witness] was harmless." *Id.* at 448-49 (quoting *Shanklin v. Commonwealth*, 222 Va. 862, 865 (1981)).

In the instant case, the proffered evidence with which Cruz was not permitted to impeach Martinez at his 2024 trial consisted of statements Martinez allegedly made to a police officer around the time M.C.M. disclosed Cruz's abuse in late 2020. According to defense counsel's proffer, Martinez told the officer that M.C.M. was "known to exaggerate things and ha[d] lied about other incidents." As expanded by the prosecutor, Martinez made three additional statements—that M.C.M. "ha[d] never made any sexual accusations in the past," Martinez "d[id] no]t know why the child would make . . . up" the allegations, and Martinez herself was "suspicious" of Cruz "because he left the area after being confronted [about] the allegations."

Cruz called Martinez as a witness expecting her to testify consistently with her prior statements that M.C.M. was known to exaggerate and lie. Instead, she testified injuriously, at least initially, that she *believed* M.C.M. when the child reported that Cruz had abused her. So defense counsel sought to impeach Martinez with her earlier statements to the police. *See*

---

[5] Legal error characterized as the "improper restriction of a criminal defendant's right to cross-examination" can qualify for constitutional harmless-error review. *See Pereira*, 83 Va. App. at 448. Cruz, however, objected below only on state statutory and common-law grounds, and he cites only the nonconstitutional harmless-error standard for application on appeal. *See Dupree v. Commonwealth*, 272 Va. 496, 496 (2006) (per curiam) (applying *Clay*'s nonconstitutional harmless-error standard to a violation of Code § 8.01-403); *id.* at 499-500 (Lacy, J., dissenting) (also applying *Clay*'s nonconstitutional standard).

- 8 -

*Ragland*, 16 Va. App. at 920-21; *see also Hall*, 233 Va. at 374-75 (explaining that under the common law, prior inconsistent statements are admissible only for impeachment, not for truth). The trial court denied Cruz's request to treat Martinez as adverse, thereby preventing him from confronting Martinez directly with those statements.

But even so, while continuing to testify as Cruz's witness, Martinez largely admitted making the statements with which defense counsel had sought to impeach her—that M.C.M. was "known to exaggerate things and ha[d] lied about other incidents." Despite initial denials, she admitted speaking to the investigating officer, and she explained her memory of what she said. She claimed she told the officer that M.C.M. "was just like any other child," "[s]ometimes" not "tell[ing] the truth" about "[s]mall stuff," like "whether [a playmate had] hit [her]" or was "the one to blame" for a minor tiff. As such, she admitted, as defense counsel had proffered, that M.C.M. sometimes exaggerated or lied. Martinez elaborated that she told the officer she did not know what to say about the child's truthfulness "on serious matters." This testimony too was in keeping with the additions to the defense's proffered statement to the officer that M.C.M. "ha[d] never made any sexual accusations in the past," a type of accusation that certainly qualified as a "serious matter[]." According to Martinez, she told the officer both that she "believed [M.C.M.'s]" accusations and she "didn't know" whether she believed the child. She admitted the accusations were "hard [for her] to believe" at the time because Cruz was "like a brother" and she had "trust[ed] him fully before this."

Consequently, even though defense counsel was prevented from confronting Martinez directly with her inconsistent statements to the officer, counsel elicited much of the same information from her anyway, allowing him to neutralize her testimony in very similar fashion.[6]

---

[6] If defense counsel had been permitted to impeach Martinez directly with extrinsic evidence of her prior statements to law enforcement, as contained in the officer's notes, she would still have had "an opportunity to explain or deny" them. *See* Va. R. Evid. 2:613(a). And

- 9 -

And Martinez's admissions while testifying were supplemented by M.C.M.'s own testimony and prior statements. M.C.M. recounted in her recorded forensic interview, conducted within days of her initial report about Cruz, that when she first made the accusation of abuse, Martinez called her a "stupid liar" and insisted the abuse had not occurred. M.C.M. reiterated these points when defense counsel cross-examined her at trial. She also elaborated that Castro had contemporaneously prohibited Martinez from entering their home because Martinez believed Cruz rather than M.C.M., a fact that Martinez had also denied.

Based on all of the evidence, defense counsel was able in closing argument to the jury to impeach Martinez to the extent she surprised counsel by testifying that she believed M.C.M.'s allegations against Cruz when M.C.M. first disclosed them. Defense counsel noted M.C.M.'s testimony that Martinez called her a stupid liar at the time of the disclosure, and counsel contrasted those statements with Martinez's inconsistent testimony at trial claiming that she both believed M.C.M. at the time of the disclosure and was not sure whether to believe her. Finally, counsel pointed to M.C.M.'s testimony that Martinez was not allowed in the Castro home as a result, a fact that Martinez had "denied on the stand."

This evidence and counsel's argument to the jury establish that the trial court's refusal to declare Martinez adverse or hostile, if error, was harmless because the impeachment evidence Cruz sought to admit ultimately was merely cumulative. The evidence admitted, including through the later testimony of Martinez herself, permitted counsel to undercut her initial claim at trial that she never doubted M.C.M.'s accusations about Cruz. *See Pereira*, 83 Va. App. at 449-50. We hold, therefore, that the alleged error "did not 'influence the jury' or had only a

---

the jury was properly instructed that it could determine the "weigh[t]" to give each witness's testimony and "accept or disregard all or part of" each witness's testimony "as [it] th[ought] proper."

'slight effect,'" rendering it harmless under the nonconstitutional standard. *See Shifflett*, 289 Va. at 12 (quoting *Clay*, 262 Va. at 260).

## II. Digital Penetration & Double Jeopardy

Cruz argues that the trial court erred by denying his motion to strike the charge of object sexual penetration. His argument has two parts. He contends first that the evidence was insufficient to prove a third act of penetration, beyond the penile and oral penetrations that supported the convictions for rape and sodomy. He then suggests that, absent proof that he penetrated the victim's labia majora with his hand or finger, his conviction and punishment for object sexual penetration violated constitutional protections against double jeopardy.

### A. Procedural Default Under Rule 5A:20(e)

Principles of judicial restraint direct that appellate courts should decide cases on the best and narrowest ground. *See Shaw*, 304 Va. at 233. The best and narrowest ground often involves the application of procedural default principles. *See Delp v. Commonwealth*, 72 Va. App. 227, 235 n.4 (2020).

Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008), *aff'd in part and vacated in part on other grounds*, 279 Va. 52, 58-60 (2010)). "'[W]hen a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Conley v. Commonwealth*, 74 Va. App. 658, 681 (2022) (alteration in original) (quoting *Bartley*, 67 Va. App. at 744).

- 11 -

Here, Cruz did not develop the sufficiency piece of his second assignment of error either factually or legally in his opening brief. That failure is significant, and as a result he waived this portion of the assignment of error.

First, factually, M.C.M. was asked on direct examination to describe what "inside the vagina" meant. She replied that it meant "[the] hole." Then, when asked "[w]hat, if anything, . . . Cruz put inside [her] vagina," M.C.M. said his penis, tongue, "*and hand*." (Emphasis added). This testimony, standing alone, proved three different penetrations supporting his convictions for rape, oral sodomy, and object sexual penetration. In his opening brief, however, Cruz ignored this direct testimony of M.C.M. In both his statement of facts and analysis, he noted only her later direct testimony that she did not *remember* whether Cruz put his hand in her vagina. "[I]t is not the role of the [appellate] court[] . . . to . . . construct a litigant's case or arguments for him or her, and where a party [has] fail[ed] to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley*, 67 Va. App. at 746 (quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010)), *quoted with approval in Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018). Cruz's acknowledgment of M.C.M.'s testimony that he put his hand "in" her vagina and minimal argument countering it, made for the first time in his reply brief, came too late. *See Jeter v. Commonwealth*, 44 Va. App. 733, 740 (2005) (noting that "Rule 5A:20 expressly applies only to the '[o]pening [b]rief,'" "an entirely separate rule . . . [addresses] an appellant's reply brief," and "[c]ompliance with one rule cannot excuse . . . failure to comply with the other").

Second, from a legal perspective, Cruz provided no legal authority in support of the sufficiency portion of his argument in either of his briefs. He did not address the legal impact of M.C.M.'s conflicting testimony on direct examination—that (a) Cruz put his hand "inside" her vagina and (b) she "d[id]n't remember" whether "h[e] put[] his hand inside [her] vagina." In his

reply brief, Cruz argued that the testimony indicating digital penetration cannot be used to support his conviction because M.C.M. "immediately retracted" it and the prosecution did not rely on it. In fact, he contended at oral argument that the prosecution made a factual concession that only two penetrations occurred. Once again, however, he cited no authority setting out the applicable standard of review or the general framework for analyzing the sufficiency of the evidence or determining whether a litigant has made a binding factual concession. He also failed to point to specific law addressing what the fact finder is permitted to do with conflicting statements from a single witness or under what circumstances an appellate court may apply a legal theory not advanced by the prosecution in the trial court.

As a result, we hold that the sufficiency portion of Cruz's argument is waived due to his failure to provide the Court with the factual and legal framework through which to evaluate it. *See* Rule 5A:20(e); *Jay v. Commonwealth*, 275 Va. 510, 519-20 (2008); *see also Doe v. Green*, ___ Va. ___, ___ & n.8 (Nov. 26, 2025) (recognizing that "an appellant's failure to raise a specific argument in her opening brief" and to cite supporting authorities waives that argument).

## B. Double Jeopardy

Cruz argued in his reply brief that even if he "waived the *first* sentence of [his] second assignment of error" (claiming the insufficiency of the evidence to prove a third penetration) by failing to brief it adequately, "the *second* sentence" (claiming a double jeopardy violation due to proof of only two penetrations) "is properly supported and argued in the [o]pening [b]rief and [provides a] sufficient [basis] for this Court to reverse" his conviction for object sexual penetration. This argument fails to acknowledge that the first and second sentences of the assignment of error are inextricably linked.[7] Based on Cruz's failure on procedural grounds to

---

[7] Cruz's appellate counsel correctly acknowledged this connection during oral argument, agreeing that if the evidence proved three penetrations, no violation of double jeopardy protections had occurred.

establish the absence of a third penetration, he provides no factual basis to support his double jeopardy claim. *See generally Severance v. Commonwealth*, 295 Va. 564, 572 (2018) (holding that "killing two victims at two different times . . . constitute[d] two different criminal acts" and conviction for both did not violate double jeopardy principles). Accordingly, we must hold on procedural grounds that Cruz has not established he is entitled to any relief on this assignment of error.

CONCLUSION

Assuming without deciding that the trial court erroneously denied Cruz's motion to declare Martinez an adverse witness, any such error was harmless on the facts here. The excluded impeachment evidence was merely cumulative of admitted testimony from Martinez and other evidence that provided additional bases for impeaching her, all of which was available for defense counsel to use as impeachment during closing argument. Further, Cruz waived his claim that his object-sexual-penetration conviction violated double jeopardy protections because, on brief, he simply did not address the sufficiency of the evidence to support a third vaginal penetration, one committed with his hand. Absent an analysis of the factual and legal bases upon which he claims the evidence was insufficient, we cannot conclude that a double jeopardy violation occurred. As a result, we affirm his convictions.

*Affirmed.*