# Wytheville

## Virginia Electric and Power Company v. Mary S. Hall.

### June 6, 1945.

### Record No. 2939.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*Q. C. Davis, Jr., J. L. Broudy* and *M. R. Broudy,* for the defendant in error.

Eggleston, J., delivered the opinion of the court.

Shortly after noon, on Sunday, October 19, 1941, Miss Mary S. Hall was a passenger on a bus of the Virginia Electric and Power Company which was proceeding north along Colley avenue, in the city of Norfolk. She was seated about the center of the bus on the right-hand side. Her sister-in-law, Mrs. Arnold Hall, sat by her, and in the next seat to the rear was Mrs. Joseph Newby, a sister of Mrs. Hall.

At the intersection of Colley avenue and Twenty-sixth street the bus collided with an automobile, driven westwardly along Twenty-sixth street by Mrs. Dorothy Peacock. As a result of the collision, Miss Hall was thrown from the seat to the floor of the bus and her back was severely injured. She sued the Virginia Electric and Power Company for damages for her injuries and recovered a verdict and judgment of $6,000.

The defendant company concedes that the evidence was sufficient to have warranted the jury in finding that the negligence of the bus driver was a proximate cause of the collision and of the plaintiff's injuries. It seeks a reversal of the judgment on the sole alleged ground that the trial court committed reversible error in declining to permit it to show, for the purpose of impeachment, that Mrs. Hall and Mrs. Newby, who were called as witnesses for the defendant, had previously made verbal statements inconsistent with the testimony given by them.

At the trial it developed that the testimony of neither of these witnesses was in accord with previous verbal statements which they had made to an investigator for the defendant company shortly after the accident. Counsel for the defendant then stated to the court that he was taken by surprise by the attitude of the two witnesses, that they were adverse to the defendant, and asked leave of the court for permission to impeach their credibility under the provisions of Code, section 6215, by laying the foundation therefor and showing, by the cross-examination of them and by the independent testimony of the investigator, that such prior inconsistent statements had been made.

The trial court overruled this motion of the defendant upon the ground that since the prior inconsistent statements had not been made direct to counsel for the defendant, he was not entitled to claim that he was surprised by their testimony which was inconsistent therewith. However, after the evidence had been transcribed, the court reached the conclusion that the reason given by it for denying the motion was not proper, but that a careful consideration of the testimony of the two witnesses showed that neither was, in fact, "adverse" to the defendant within the meaning of Code, section 6215, and that hence the defendant was not entitled to impeach their credibility under the statute.

Code, section 6215, reads as follows: *"Witness proving adverse; contradiction; prior inconsistent statement.*—A party producing a witness shall not be allowed to impeach his

credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony, but before said last-mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness."

It will be observed that the right of contradiction of one's own witness under the statute is subject to these limitations: (1) The trial court, and not counsel, is the judge as to whether a witness has proven adverse or hostile to the party introducing him. (2) The purpose of such contradiction is merely to impeach the credit of the witness and show that he is unworthy of belief. His prior inconsistent statements are not substantive evidence of the matters therein contained.

Moreover, it should be remembered that the trial court sees and hears the witness on the stand, observes his demeanor, and hence is in a much better position to determine whether he is in fact adverse or hostile than is an appellate court which must rely on the printed record.

While we have heretofore considered other phases of this statute we have not previously determined whether, under circumstances to be related, one may contradict his own witness by showing that he has made previous inconsistent statements.

Statutes similar to Code, section 6215, are in effect in a number of the States and the decisions construing them are by no means uniform. Wigmore on Evidence, 3d Ed., Vol. 3, section 905, p. 404 ff. However, by the weight of authority, one is not permitted to impeach his own witness merely because the latter does not come up to his expecta-

tion. It is only when the testimony of the witness is injurious or damaging to the case of the party introducing him that the witness can be said to be adverse so as to justify his impeachment. If the testimony is of a negative character and has no probative value, there is no need to discredit the witness.

As is said in Jones' Commentaries on Evidence, 2d Ed. Rev., Vol. 6, section 2431, p. 4812: "Even under the statutes, the right of a party to impeach his own witness arises only when the witness testifies to some matter prejudicial to the party calling him. Hence, both at common law and under the statutes of the type adverted to above, mere failure of a witness to prove the fact for which he was called does not make him an adverse or hostile witness justifying impeachment by proof of former statements. It is not enough that he disappoints the expectations of the party calling him by failure to give beneficial testimony."

To the same effect, see 28 R. C. L., Witnesses, section 229, pp. 645-6; 70 C. J., Witnesses, section 1228, p. 1034 ff. The authorities cited are supported by a number of cases from various jurisdictions.

When we examine the testimony of Mrs. Hall and Mrs. Newby, in the light of the above principles, we conclude that the trial court was correct in its view that neither witness was adverse or hostile to the defendant within the meaning of Code, section 6215. Certainly, we can not say from the printed pages before us that its ruling was wrong.

A statement of the issues involved and a relation of the manner in which the question arose will be helpful in determining the soundness of the trial court's ruling.

The contention of Mrs. Peacock, the driver of the automobile, called as a witness for the plaintiff, was that she approached the intersection at a moderate speed; that she reached it before the bus got there; that she came to a full stop, shifted the gears of her car, and was in the act of making a right-hand turn into Colley avenue when the left side of her car was sideswiped by the right side of the bus, which was proceeding at a rapid speed.

It was the contention of the defendant company that its bus was proceeding at a moderate speed; that that vehicle reached the intersection first, and had almost cleared it, when the Peacock automobile approached at a high rate of speed, and, without slowing down or turning, ran headlong into the right rear side of the bus.

With respect to the vital details of the collision, Mrs. Hall testified as follows:

(1) As to the speed of the bus, she said: "I paid no attention whatever to the speed of the bus, and I couldn't tell."

(2) With respect to the speed of the Peacock car, she said: "I couldn't (tell), because I don't drive a car, and I don't know about judging speed."

(3) As to how far the Peacock car was from the bus when she first saw it, she said: "I wouldn't know exactly how far. I just saw the car coming. I never paid much attention to it."

(4) Asked as to the position of the bus in the intersection when she first saw the approaching car, her reply was: "As well as I remember, I saw the car coming down and the bus had just gotten to about the middle of the street."

(5) On being asked whether the Peacock car slowed down or turned in either direction before the collision, she said: "I couldn't tell you."

(6) She was asked whether the automobile struck the rear of the bus. Her reply was: "I don't know. I didn't see it hit." "I didn't see a thing that happened. I really did not."

(7) Asked whether the bus stopped "immediately after the accident," she said: "No; I don't think he did." "I think it moved about, I would say, about a block," "up to the next corner."

For the purpose of comparison, we set out, with corresponding numbers, the same details of the collision as

related by Mrs. Hall to the investigator of the defendant company.

(1) "The bus was running along at a moderate speed."

(2) "I saw the auto coming fast." It "must have been running not less than 35 miles per hour." Its speed was "at least twice as fast as the bus."

(3) When she first saw the Peacock automobile "it must have been about 50 or 60 ft. from us."

(4) When she first saw the Peacock automobile "the front of bus was about across the intersection."

(5) The automobile "did not appear to slow down any or turn (in) either direction."

(6) It "just ran headon into the side of the bus behind where we were sitting."

(7) The driver "stopped the bus quickly."

It will thus be seen that there is quite a variation between Mrs. Hall's statement to the investigator and her testimony at the trial. The statement tended to show that Mrs. Peacock, the driver of the automobile, was solely at fault for the collision. While Mrs. Hall's testimony did not come up to the expectation of the defendant in this respect, it was not at all injurious to the defendant's case. It gave aid and comfort neither to the plaintiff nor to the defendant. It was entirely negative in character and of no probative value.

Since, under the statute, the prior inconsistent statements could not be considered as substantive evidence, they were not proof of the negligence of Mrs. Peacock, the driver of the car.

It is true that Mrs. Hall said in her statement to the investigator that the bus stopped "quickly" after the impact, and in her testimony that it went "about a block" beyond the point of collision. But there was nothing in her testimony to show that the failure of the bus to stop promptly was due to its excessive speed, or lack of proper lookout, or in any way to the negligence of its operator.

The same analysis may be made of Mrs. Newby's testi-

mony and her prior statement to the investigator. While her testimony did not come up to the expectation of the defendant, as it had the right to believe from the statement which she had given the investigator, she testified to nothing which was injurious to the defendant's case, or which tended to show that the operator of the bus was at fault. She, too, insisted at the trial that she did not know the speed of the bus, or of the other car, or which vehicle reached the intersection first, or whether the Peacock car slowed down before the collision. She did, in fact, testify that the car seemed to be headed toward the window near the center of the vehicle where she was seated, which supported the defendant's contention as to the manner in which the vehicles collided.

It would have been in no wise helpful to the defendant to have impeached the credibility of either or both of these witnesses, for the testimony of neither was of any probative value. The strength of the plaintiff's case was in the testimony of other witnesses.

Indeed, the testimony of the driver of the bus was sufficient, in our opinion, to have justified the jury in finding that he was guilty of negligence. He admitted that he did not stop or even slow up at the intersection; that when he reached the building line along the southern side of Twenty-sixth street, he could see a distance of seventy-five or one hundred feet to his right along that street, but did not see the approaching car, yet Twenty-sixth street is forty and six-tenths feet wide at its intersection with the eastern line of Colley avenue where the collision occurred.

It is unnecessary for us to consider whether counsel for the defendant might have cross-examined the two witnesses for the purpose of refreshing their recollection of the statements which they had made to the investigator. No such request was made of the court below. The sole avowed purpose of showing such prior statements was to impeach or discredit the witnesses, and disclosing to the jury that their testimony was unworthy of belief. But since, as we have

seen, their testimony was entirely negative in character and of no probative value, we can perceive no prejudice which has been suffered by the defendant in the failure of the court to permit such impeachment.

Accordingly, the judgment complained of is

*Affirmed.*