COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Lemons and
         Senior Judge Duff
Argued at Alexandria, Virginia


MAURICE JOHNSON
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 0096-98-4           JUDGE DONALD W. LEMONS
                                         JUNE 22, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                       John E. Kloch, Judge

          Steven L. Duckett, Jr. (MacDowell &
          Associates, P.C., on brief), for appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Maurice Johnson was convicted of malicious wounding in

violation of Code § 18.2-51.  On appeal, Johnson contends that

the trial court erred by refusing to allow him to impeach the

victim using statements he allegedly made at Johnson's

preliminary hearing.  We hold that the trial court committed no

error, and we affirm the conviction.

                         I.  BACKGROUND

     In the evening of June 25, 1997, Antonio Carroll, the

victim ("Antonio"), his brother Anthony Carroll ("Anthony"), and

two other men were standing in a parking lot in the City of

_____
     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

Alexandria. Antonio testified at trial that three vehicles drove into the parking lot and "cut us off so there wasn't no [sic] way we could run away" and "about six" people exited the cars, including Maurice Johnson, appellant. Antonio stated that these individuals were looking for "this boy named Rashad," a friend of Antonio's, but that Rashad was not with Antonio that evening.

Antonio testified that a fight broke out between Anthony and one of the men who had exited the car. Antonio stated, "I went over there and helped my brother. We started fighting. Then before I could move away, I got stabbed." At trial, Antonio identified Johnson, known to the victim as "Mookie," as the individual who stabbed him, testifying that he observed Johnson "when he was pulling the knife out" of Antonio's side.

During his cross-examination of Antonio, Johnson's counsel asked Antonio whether he remembered telling a detective that two vehicles, not three, had arrived at the parking lot on the night of the attack. Antonio responded that he remembered telling the detective that there were three vehicles. Johnson's counsel then inquired, "Do you remember testifying at the preliminary hearing down in juvenile court?" The Commonwealth objected on the grounds that counsel was required to show Antonio prior testimony before impeaching him. The court agreed, stating, "I think you can ask him if he said something different at some

other time.  I don't think you can go to the preliminary hearing and say 'Did you say something different than this?'"  Following further objection to the form of the question by the Commonwealth, Johnson's counsel asked Antonio if he remembered "testifying differently at the preliminary hearing?"  Antonio responded "I might have did [sic].  I forgot it."  Johnson's counsel then asked Antonio if he remembered "saying there were two cars[.]"

The Commonwealth objected, stating that Antonio had already answered the question and that Johnson's counsel was required to independently establish what Antonio had allegedly said at the preliminary hearing.  The court agreed with the Commonwealth, stating that counsel had to show Antonio "the transcripts, let him look at it, and say either, 'I said that' or 'No, I didn't.'"  Johnson's counsel agreed, but before he introduced a transcript, the Commonwealth objected again, arguing that there was no official transcript from the preliminary hearing.  The Commonwealth argued that the court should prohibit Johnson from "using an unofficial transcript that's not been certified by anyone."  In response to the Commonwealth's objection, the court stated,

> Well, I think if he wants to impeach him, he has to make sure that's correct.  He hasn't gotten to that stage yet.  If he's offering that to show that the defendant said something else, then I would agree with you.

He needs to show that foundation.  But he
hasn't reached that stage yet.

Johnson's counsel again asked whether Antonio remembered what he said at the preliminary hearing, and Antonio responded, "[i]t was a month ago[,] I can forget things, you know." Johnson's counsel made no further attempt to introduce a transcript from the preliminary hearing.

Officer Valencia Burges of the City of Alexandria Police Department testified that she spoke with Antonio at the hospital the night of the stabbing.  Burges stated, "[Antonio] didn't know [who stabbed him].  The person came behind him.  He didn't see the person."  Burges also stated that she only spoke to Anthony for a few seconds and that she couldn't recall whether Anthony had given her any information.  Detective Derrill Scott of the Alexandria Police Department, who investigated the incident, stated that he interviewed both Antonio and Anthony and neither of them mentioned a third vehicle.  Scott testified that neither Anthony nor Antonio told him that Johnson was the individual who had stabbed Antonio, but that Anthony told him that Johnson was involved in the fighting.

## II.  IMPEACHMENT OF ANTONIO CARROLL

Johnson contends that the trial court erred when it refused to permit him to "begin a line of impeachment questions without a properly authenticated transcript from the preliminary hearing."  Johnson also argues that the court erred in refusing

to allow him to "refresh a witness' recollection of prior testimony with an unauthenticated transcript, thus precluding any possibility of impeaching that witness on the inconsistent testimony." A witness may be impeached by prior statements made by the witness that are inconsistent with his present testimony. See Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987); Code § 8.01-403; Code § 19.2-268.1.

During its direct examination of Antonio, the Commonwealth asked him how many cars drove up into the parking lot. Antonio stated, "I think it was about three." On cross-examination, Johnson's counsel asked Antonio whether he recalled telling Detective Scott, the investigating detective, that there were only two cars involved. When Antonio responded that he had told the officer that there had been three, the following colloquy took place:

> Q: Do you also remember testifying at the preliminary hearing down in juvenile court?
>
> A: Uh-huh.
>
> Q: And do you remember telling the Court --
>
> [COMMONWEALTH]: Your Honor, I'm going to object at this point. If counsel is trying to impeach him with prior testimony, he needs to show him the prior testimony and find out why it's different.
>
> [DEFENSE COUNSEL]: I have to ask him the question, Your Honor.
>
> THE COURT: I think you can ask him if he said something different at some other time.

I don't think you can go to the preliminary hearing and say, "Did you say something different than this?" If he says something different than he said at the preliminary hearing, then I think you can ask him. If he says something different than that and he denies it, then I think you can go into the transcript and show it to him.

[DEFENSE COUNSEL]: That's what I was about to ask him, Your Honor.

THE COURT: All right:

Q: Do you remember saying at the preliminary hearing --

[COMMONWEALTH]: It's the same objection, Judge.

THE COURT: What did he just say that you're challenging?

[DEFENSE COUNSEL]: About the incident in toto [sic]. Everything he's saying now is totally different from every other statement he's given to the police, the preliminary hearing, everything. I have a right to ask. I have to ask him if he remembers making the statement. That's the way to impeach him. You've got to remind him of the statement. You've got to say, "Did you make that statement?" He either says, "Yes" or "No."

THE COURT: You're impeaching him on everything that he's testified?

[DEFENSE COUNSEL]: For the most part. There's a lot of inconsistencies in what he just said in court today.

THE COURT: Well, let's go through them one at a time.

[DEFENSE COUNSEL]: Okay.

Q: Do you remember --

THE COURT:  On which of his present testimony are you impeaching him?  What did he just say that you're impeaching?

[DEFENSE COUNSEL]:  Well, that there were two cars.

THE COURT:  And he said that?

[DEFENSE COUNSEL]:  He said that there were two cars at the preliminary hearing.

THE COURT:  All right.

[DEFENSE COUNSEL]:  He said that --

THE COURT:  He said there were three cars here.  You can ask him whether he remembers saying something differently at the preliminary hearing.

Q:  Do you remember testifying differently at the preliminary hearing?

A:  I might have did [sic].  I forgot it.

Q:  You forgot?

A:  Yes.

Q:  You don't remember saying there were two cars?

[COMMONWEALTH]:  Your Honor, once again I'm going to object to the form in which counsel is doing this.  He can ask the witness what he's testifying to today.  He can ask him if he remembers testifying differently on another occasion
    He clearly said no.  Counsel then has to go the next step.  And the next step is not to put in the record what he thinks the witness said on another occasion.

THE COURT:  You have to show him the transcripts, let him look at it, and say either, "I said that" or "No, I didn't."

[DEFENSE COUNSEL]:  Okay.

[COMMONWEALTH]:  Your Honor, I think even preliminary to that, to the best of my knowledge, there was no court reporter.  So I don't know what kind of transcript counsel is even using.  So I would object to his using an unofficial transcript that's not been certified by anyone.
     I don't know where the transcript came from.  I don't know who typed it up.  And if counsel wants to use that, he's got to preliminarily make sure that's correct.  He's not done that.

THE COURT:  Well, I think if he wants to impeach him, he has to make sure that's correct.  He hasn't gotten to that stage yet.  If he's offering that to show that the defendant said something else, then I would agree with you.  He needs to show that foundation.  But he hasn't reached that stage yet.

[DEFENSE COUNSEL]:  Okay.

Once counsel elicits responses he or she believes are inconsistent with a witness' prior statements, counsel may impeach the witness in three steps.  First, counsel must call the witness' attention to the circumstances of the particular occasion on which the alleged prior statement was made.  Second, counsel must ask the witness whether he recalls making the inconsistent statement.  See Waller v. Commonwealth, 22 Va. App. 53, 60, 467 S.E.2d 844, 848 (1996).  Third, "[i]f the witness denies or is unable to recall having made the statement, counsel must then prove the statement actually was made."  Patterson v. Commonwealth, 222 Va. 612, 616-17, 283 S.E.2d. 190, 193 (1981).

- 8 -

Proof of the prior statement "includes the testimony of another witness who heard the prior inconsistent statement, or the transcript of a prior hearing." Edwards v. Commonwealth, 19 Va. App. 568, 571, 454 S.E.2d 1, 2 (1995) (citations omitted).[1]

Johnson claims that he should have been permitted to impeach Antonio's testimony based upon statements that he allegedly made about the number of cars that entered the parking lot. However, Johnson's counsel did in fact impeach Antonio on this issue. Johnson's counsel asked Antonio whether he recalled telling Detective Scott that he only saw two cars. Antonio stated that he told Scott that there were three cars present. Later, over the Commonwealth's objection, the court permitted defense counsel to ask Scott whether Antonio or his brother ever mentioned a third vehicle, stating, "[defense counsel] laid the foundation . . . for impeachment of the witness [Antonio], who said he didn't tell the officer that." Scott testified that in the course of his investigation, Antonio had never mentioned a third car. Scott's testimony completed the impeachment.

---

[1] "Although laying a foundation prior to the introduction of impeachment evidence is a separate and necessary step in the impeachment process, it is not contingent on the existence of a transcript. While using a transcript, if available, is the preferable means of laying an impeachment foundation, it is not the only means." Edwards, 19 Va. App. at 571-72, 454 S.E.2d at 2.

### III.  Refreshing Witness' Recollection

Johnson also argues that the trial court erred in refusing to allow him to refresh Antonio's recollection of his prior testimony through the use of an unauthenticated transcript.

A reviewing court need not consider whether the trial court erred in refusing to allow a defendant to cross-examine a witness for purposes of refreshing that witness' recollection when the defendant failed to make this same request at trial, and where "[t]he sole avowed purpose for showing such prior statements was to impeach or discredit the witness[]. . . ." Virginia E & P. Co. v. Hall, 184 Va. 102, 109, 34 S.E.2d 382, 385 (1945).  Johnson never asserted at trial that he was attempting to refresh Antonio's recollection.  Rather, it is apparent from the record that Johnson was attempting to lay a foundation to impeach Antonio.  We will not consider this issue for the first time on appeal.  See Rule 5A:18; Ingram v. Commonwealth, 1 Va. App. 335, 341, 338 S.E.2d 657, 660 (1986).

### IV.  CONCLUSION

Based upon the foregoing, we hold that the court committed no error, and we affirm the conviction.

Affirmed.