COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judge Petty and Senior Judge Coleman


POLLY ANN GOODSON

MEMORANDUM OPINION[*] BY
v.      Record No. 2305-05-3      JUDGE WILLIAM G. PETTY
                                  NOVEMBER 14, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Larry B. Kirksey, Judge

(Daniel R. Bieger; Copeland & Bieger, P.C., on brief), for appellant.
Appellant submitting on brief.

(Robert F. McDonnell, Attorney General; Denise C. Anderson,
Assistant Attorney General, on brief), for appellee. Appellee
submitting on brief.


A jury convicted Polly Ann Goodson of solicitation to commit a felony in violation of Code

§ 18.2-29. On appeal, Goodson argues that the trial court erred when it allowed the Commonwealth

to refresh a witness's recollection; allowed the Commonwealth to read portions of a witness's prior

statements to the jury to show that they may have been inconsistent with that witness's trial

testimony; and denied her motion for a mistrial. Goodson also contends that the evidence adduced

at trial was insufficient to support her conviction.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In her Statement of Questions Presented, Goodson includes the question, "Did the court err by allowing the Commonwealth Attorney [sic] to ask leading questions to Commonwealth witness Ruth Widener?" In the argument section of the brief, this question is not addressed. Furthermore, Goodson did not include this question in her petition for appeal and, accordingly, no appeal was granted on this issue. We will not address it in this opinion.

For the reasons stated below, we hold the trial court erred by improperly allowing impeachment evidence; thus, we reverse Goodson's conviction and remand for a new trial if the Commonwealth be so advised.

## I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable inferences fairly deducible from the evidence. Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993). So viewed, the evidence establishes Goodson asked Tammy Reece to burn down Emma Brabson's home, reasoning that the juvenile and domestic relations court would be less likely to award custody of her granddaughter to Brabson if Brabson did not have a house.

Goodson offered Reece, whom she knew had a history of drug abuse, forty ten-milligram Lortab tablets in exchange for committing the arson. She also stated that she would buy five gallons of gasoline to use as an accelerant and would wait around the corner from the Brabson home while Reece started the fire. Later, Goodson repeated her proposition to Reece and took Reece, Ruth Widener, and her granddaughter to drive by Brabson's home so Reece could become familiar with the property. Reece identified pictures of the property at trial. Following the second incident, Reece reported her conversations with Goodson to the police.

Goodson's first trial in June 2004 resulted in a mistrial. The Commonwealth tried Goodson again on July 8, 2005. During the course of the trial, the Commonwealth's Attorney called Ruth Widener, Goodson's best friend, to testify. The Commonwealth's Attorney asked whether Goodson and Reece ever discussed burning down a house in her presence. Widener responded that everyone said, "Well, we wish that [Brabson's] house would burn down." When the Commonwealth's Attorney pressed Widener as to who specifically made that statement, she replied she did not remember because she had suffered brain damage and was taking "fourteen kinds of medication."

She also stated that she "did not think" that the subject of drugs had come up during the conversation in question. After Widener stated that she "did not think" she had ever been to the Brabson home, the Commonwealth's Attorney asked whether she recalled testifying in the 2004 trial, explaining that he was attempting to refresh Widener's recollection. The trial court allowed the question for the purpose of refreshing the witness's recollection. Widener responded that she had no memory of testifying in the earlier trial. At this point, the Commonwealth's Attorney abandoned his attempt to refresh the witness's recollection and sought to have the witness declared unavailable.

The trial court responded by allowing the Commonwealth's Attorney to "present such statements from the prior proceeding for the purposes of establishing, if there is any, a statement that may be inconsistent if that is the purpose for which you are attempting to do so." The trial court also instructed the jury that they "should be aware that any statement that's being offered at this time is not offered for the truth of the matter but simply to show that there may be an inconsistency . . . with respect to the witness's testimony."

The Commonwealth's Attorney then began to read from the transcript and ask Widener if she remembered the questions and answers from the earlier trial. Eventually, the Commonwealth's Attorney allowed the witness to read her answers directly from the 2004 transcript without asking whether she remembered making those statements for several questions; the Commonwealth's Attorney also read portions of Widener's 2004 testimony into evidence, at one point misreading a portion of testimony.[2]

---

[2] The Commonwealth's Attorney asked whether Widener remembered saying, "Well, she told Polly she said you'll have to buy the gas, you'll have to haul it in your car and take me out there," and whether she remembered testifying that Goodson responded "I'm not hauling no gas out there in the car when I take you out there." The Commonwealth misread the 2004 trial transcript at this point. Widener testified at the first trial that Goodson told Reece, "I will not haul no gas out there in my car, *I will not take you out there*." (Emphasis added.)

During his closing argument, the Commonwealth's Attorney referenced Widener's testimony. While the Commonwealth's Attorney noted that the prior testimony read into evidence was for impeachment purposes, he stated:

> a year ago [Widener] said that she and Polly or Polly and Tammy were talking about the burning. Now she didn't remember. A year ago she was more certain that the house in the photographs and the outbuilding, in particular, is what she saw and now she is not so sure.

The Commonwealth's Attorney also advised the jury that it was "entitled and the law is in favor for this that you can disregard any part of [Widener's] testimony that you wish. You can discard that part that you don't believe. It doesn't mean you don't have to believe [Widener] just that you don't have to believe all of it. You can just believe parts of it."

## II.    ANALYSIS

## A.  Ruth Widener's Testimony

Goodson argues the trial court erred in allowing the Commonwealth to refresh Widener's recollection and in allowing the Commonwealth to impeach Widener using a prior, inconsistent statement. We hold the trial court erred in allowing the Commonwealth to impeach Widener's testimony, but that Goodson defaulted her argument regarding the Commonwealth's attempt to refresh her recollection. This Court reviews a trial court's evidentiary rulings for abuse of discretion in admitting evidence. Quinones v. Commonwealth, 35 Va. App. 634, 639, 547 S.E.2d 524, 527 (2001).

## 1.  Present Recollection Refreshed

Goodson argues the trial court erred when it allowed the Commonwealth to attempt to refresh Widener's recollection. Since Widener indicated that she did not recall testifying in the previous trial and the Commonwealth abandoned this line of questioning before the witness provided any evidence, we need not address this issue on appeal.

2.  Impeachment

According to Code § 8.01-403, a party may impeach its own witness by using a prior inconsistent statement when:  (1) the court determines the witness has "prove[n] adverse;" (2) the party lays a foundation by proving the witness "has made at other times a statement inconsistent with his present testimony" and the witness is "asked whether or not he has made such statement;" and (3) the court instructs the jury, "if requested by any party . . . not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness."  See also Charles E. Friend, The Law of Evidence in Virginia, § 4-11(b) (6th ed. 2003).  Code § 8.01-403 is applicable in both criminal and civil cases.  Tate v. Commonwealth, 155 Va. 1016, 1024, 154 S.E. 508, 511 (1930).

A witness "proves adverse" when she "'surprises the party by changing stories or becoming hostile on the stand.'"  Wells v. Commonwealth, 32 Va. App. 775, 783, 531 S.E.2d 16, 20 (2000) (quoting Maxey v. Commonwealth, 26 Va. App. 514, 519, 495 S.E.2d 536, 539 (1998)).  A witness does not, however, prove adverse "merely because [her testimony] does not come up to [the party's] expectation."  Virginia Elec. & Power Co. v. Hall, 184 Va. 102, 105-06, 34 S.E.2d 382, 383 (1945).  Rather, "[i]t is only when the testimony of the witness is injurious or damaging to the case of the party introducing him that the witness can be said to be adverse so as to justify his impeachment."  Id.  When the "testimony . . . has no probative value, there is no need to discredit the witness."  Id.

Here, Widener's testimony did not contain any substantive statements that were inconsistent with her prior testimony.  She simply stated she did not remember, at the second trial, what happened during the time period relevant to Goodson's alleged crime.  Thus, Widener's testimony, while it did not meet the Commonwealth's expectations, was neither probative nor damaging to the Commonwealth's case and did not properly give rise to impeachment.

- 5 -

We are guided to this conclusion through our review of well-settled precedent. In Hall, a personal injury case involving a traffic accident, the appellant argued that the trial court erred in refusing to allow it to impeach a witness based on her prior inconsistent statements to an investigator. At trial, the witness testified that she did not "see a thing that happened" and did not know anything. Id. at 107, 34 S.E.2d at 384. In her prior statement to the investigator, however, she estimated the speed of one of the vehicles involved in the accident, the relevant locations of each vehicle, and recounted the events during and immediately after the accident. Our Supreme Court affirmed the judgment of the trial court, since the surprising testimony "gave aid and comfort neither to the plaintiff nor to the defendant. It was entirely negative in character and of no probative value." Id. at 108, 34 S.E.2d at 384.

We stated the same rule more recently in Smallwood v. Commonwealth, 36 Va. App. 483, 553 S.E.2d 140 (2001). There, the appellant sought reversal of his murder conviction, arguing the court erred by allowing the Commonwealth to impeach one of its witnesses. Id. at 485, 553 S.E.2d at 141. We reversed the conviction. Id. at 494, 553 S.E.2d at 145. The witness in that case had previously told police that "she had discussed with the [appellant] for three months in advance of his marriage to [the victim] in order to get [the victim's] money, that he would then divorce [the victim] and marry [the witness]." Id. at 488, 553 S.E.2d at 142. At trial, however, the witness "denied having any knowledge about the marriage between the defendant and [the victim]." Id. at 490, 553 S.E.2d at 143. The witness also denied having any memory of her prior statements to the police. Id. at 491, 553 S.E.2d at 144. We determined impeachment was unnecessary in that case since the witness's testimony, while unexpected, did not damage the Commonwealth's case. Id. at 490, 553 S.E.2d at 143.

Smallwood and Hall control the case before us. Here, as in those cases, the witness's trial testimony was not probative. Widener only testified that she did not remember and did not know

the answers to the Commonwealth's questions. Widener's memory lapse helped neither the Commonwealth nor the defense since her trial testimony did not tend to prove whether Goodson solicited Reece to commit arson. We therefore hold that the trial court erred in allowing the Commonwealth to impeach Widener.

Since we have held that the trial court erred in the presentation of the impeachment evidence to the jury, we must now determine whether that error was harmless. Smallwood, 36 Va. App. at 490, 533 S.E.2d at 143.

### 3. Harmless Error

According to Code § 8.01-678, a criminal conviction shall not be reversed even in the presence of a trial error "[w]hen it plainly appears from the record and the evidence given at trial that [the accused] had a fair trial on the merits and substantial justice has been reached." The Commonwealth has the burden "to prove that the error was non-prejudicial." Beverly v. Commonwealth, 12 Va. App. 160, 163-64, 403 S.E.2d 175, 177 (1991).

"Although a jury is presumed to follow the [trial] court's instructions, in this situation, where the questioning was continuous, lengthy, and highly prejudicial," the trial court's instructions regarding the impeachment evidence were not enough to render the error harmless. Smallwood, 36 Va. App. at 493, 533 S.E.2d at 145. Here, the form of the Commonwealth's questions exposed the jury to prejudicial and otherwise inadmissible statements made by the witness at the previous trial. The Commonwealth did not lay the required foundation for many of the questions, instead allowing Widener to read her prior testimony directly into evidence or reading Widener's responses from the transcript into evidence. While doing so, the Commonwealth misread the transcript at one point. Additionally, the Commonwealth did not enter the trial transcript into evidence. See id. Finally, the Commonwealth referenced Widener's testimony several times during its closing argument, implying that the jury could consider Widener's prior testimony as substantive evidence.

Therefore, we reverse Goodson's conviction because we cannot say on these facts that she had a fair trial. As our holding disposes of this appeal, we need not reach the mistrial issue. However, we address Goodson's sufficiency of the evidence argument to determine whether the Commonwealth is barred on double jeopardy grounds from retrying Goodson. See, e.g., Burks v. United States, 437 U.S. 1, 18 (1978).

## B. Sufficiency of the Evidence

Goodson argues that the evidence was insufficient to support her conviction for solicitation to commit arson absent Ruth Widener's testimony. Although we reverse based on the error in admitting Widener's prior testimony, we must address Goodson's sufficiency claim: "If the evidence adduced at trial, excluding the improperly admitted expert opinion testimony, was insufficient to convict [Goodson], [she] is entitled to an acquittal; if [she] is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy." Velazquez v. Commonwealth, 263 Va. 95, 105-06, 557 S.E.2d 213, 220 (2002) (citing Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812-13 (2000)). "[A] full sufficiency analysis is required to satisfy the mandate of the Double Jeopardy Clause of the federal Constitution." Velazquez, 263 Va. at 106, 557 S.E.2d at 220 (citing Burks v. United States, 437 U.S. at 18).

When considering the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also Code § 8.01-680. We do not, therefore, "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from proven facts are matters to be determined by the fact finder. Long v.

Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Code § 18.2-29 provides in pertinent part, "[a]ny person who . . . attempts to persuade another person to commit a felony other than murder, shall be guilty of a Class 6 felony."[3] In order to convict an accused under the statute, the Commonwealth must prove that the accused's statements are "more than the expression of [her] own desire." Ford v. Commonwealth, 10 Va. App. 224, 228, 391 S.E.2d 603, 605 (1990). "'The gist of this offense is incitement. In brief, the gravamen of [the crime of solicitation lies] in counseling, enticing or inducing another to commit a crime.'" Huffman v. Commonwealth, 222 Va. 823, 828, 284 S.E.2d 837, 840 (1981) (quoting Cherry v. State, 306 A.2d 634, 637-38 (Md. App. 1973)). The offense is complete at the time of the actual solicitation; there is no requirement that the accused "proceed to the point of some overt act in the commission of crime." Wiseman v. Commonwealth, 143 Va. 631, 637-38 (1925).

In this case, the jury was free to disbelieve Goodson's version of events and instead believe Tammy Reece's testimony. The jury, who observed the witnesses and their demeanor firsthand, heard Tammy Reece testify that Goodson asked her to commit arson by burning down Brabson's home, offered her a specific quantity of Lortab to do so, and, on a second occasion, took her to the Brabson home where they engaged in a detailed conversation regarding how much gas would be required as an accelerant and negotiated such details as who would bring the gas. If believed, Reece's testimony was sufficient to establish the necessary elements of solicitation.

---

[3] The "burning . . . of a dwelling house" is a felony. Code § 18.2-77.

- 9 -

### III.     Conclusion

Since we cannot say that the improperly admitted impeachment evidence did not influence the jury's verdict in this matter, we reverse Goodson's conviction and remand for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>